345 So.2d 249 (1977)
SKYE REALTY COMPANY, Plaintiff-Appellant,
v.
STATE of Louisiana Through DEPARTMENT OF HIGHWAYS, Defendant-Appellee.
No. 5907.
Court of Appeal of Louisiana, Third Circuit.
April 13, 1977.
Rehearing Denied May 10, 1977.
*250 David K. Balfour, Norman L. Sisson, Sharon P. Frazier by David K. Balfour, Baton Rouge, for plaintiff-appellant.
William E. Skye, Alexandria, for defendant-appellee.
Before DOMENGEAUX, GUIDRY and ROGERS, JJ.
ROGERS, Judge.
Plaintiff, Skye Realty Company, brought this action against defendant, State of Louisiana through the Department of Highways, for alleged damages to property resulting from the widening of a state highway. The trial court granted plaintiff judgment on one of its demands and awarded it damages of $2,913.00, and the court awarded two of plaintiff's expert witnesses a sum total of $700.00 for expert witness fees. Separate appeals were lodged in this court, plaintiff taking a devolutive appeal and defendant a suspensive one.
The major issue presented by this appeal is whether the trial court erred in denying plaintiff compensation from the State for depreciation in value of its property, due to a public improvement project, where there had been no actual, physical taking of any portion of plaintiff's property. Another substantial issue is whether the trial court erred in granting recovery to plaintiff for damage to a drainage system that was connected to the state highway drainage system without proper authorization.
Plaintiff, Skye Realty Company, a partnership composed of two brothers, William E. Skye and Jack B. Skye, is the owner of an apartment-office complex known as Park Place located at the intersection of Masonic Drive and Cummins Street in Alexandria, Louisiana.
A portion of the complex is a two-story structure which fronts Masonic Drive. Six commercial office spaces are located at the bottom of this structure which are leased by Skye Realty for business use for rents ranging from $90.00 to $180.00 per month. On the second floor is located the back side of apartments which front a courtyard containing a swimming pool and lawn furniture. The courtyard serves as the focal point of the apartment section of the complex which contains two other wings, one running perpendicular, and the other parallel to the structure which fronts on Masonic Drive.
Prior to 1974, that portion of Masonic Drive that ran in front of Park Place was a two-lane road within the state highway system. In the spring of 1974, the defendant Department of Highways decided to widen a 1.5 mile stretch of Masonic Drive into a *251 four-lane thoroughfare, which included a portion of Masonic Drive that ran in front of Park Place. When Masonic Drive was first laid out, many years previous, defendant secured a right-of-way of sufficient width to eventually construct a larger highway. However, the initial two-lane highway did not take up the full width of this right-of-way.
When plaintiff constructed Park Place over ten years ago, plaintiff paved all the property from the edge of the then two-lane Masonic Drive to the front of his building, and then painted perpendicular parking spaces running the length of Park Place fronting Masonic Drive. The net result was that plaintiff had fourteen perpendicular parking spaces, all designated for use and located directly in front of the six commercial offices which he leased, and all fourteen of these spaces had direct ingress and egress over paved surface to Masonic Drive.
When the Department of Highways decided to widen Masonic Drive to four lanes, it was necessary to make use of a greater portion of its right-of-way. The Department found that the unlimited ingress and egress to these fourteen parking spaces was in violation of the regulations contained in the Louisiana Department of Highways Standard Plans for Driveways. As part of the construction project, the Department, pursuant to these regulations, constructed two points of ingress-egress from Park Place onto Masonic Drive of 35 feet each in width. The remaining space between the driveways located on the highway right-of-way was cleared of the paving previously placed by Skye Realty, and the exposed dirt was planted with grass and shrubbery, and curbed. Defendant informed plaintiff that these exposed areas could not be used for parking or as driveways. Due to these changes in the ingress-egress points on the right-of-way property, and the shallowness of the remaining paved parking area in front of the offices owned by plaintiff, a certain portion of this area was rendered inaccessible and unusable for parking purposes.
At the beginning of the trial, counsel for both parties stipulated that six parking places, each approximately 9 feet by 20 feet, constituted the affected area owned by plaintiff.
In regard to the question of whether Skye Realty had ever sought a driveway permit from the City of Alexandria, or from the Department of Highways, prior to construction of the parking area, counsel for plaintiff stipulated that no such permit was found by him or his contractor.
The first issue presented by this appeal is whether compensation can be awarded for the "taking" or damaging of private property by the state when there has been no actual physical taking of, or encroachment on, the property. In the instant suit, the plaintiff apparently concedes that in the lay out of the widening project and the new driveways, no use was made of its property. All of the improvements were situated on property burdened by a right-of-way in favor of defendant. Plaintiff's major claim for damages stems from the fact that due to these improvements, he has suffered the loss of use of 6 out of 14 parking places, with the result of a substantial depreciation in the value of his property.
Plaintiff contends his cause of action is based on Section II, art. 1 of the Louisiana Constitution of 1921, and its subsequent counterpart, Section IV, art. 1 of the Louisiana Constitution of 1974, the latter which reads in pertinent part as follows:
"Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit."
Plaintiff argues that his property, i. e., the six parking places, was "taken" since he has been deprived of the use for which it was intended. Plaintiff contends that since the space occupied by these parking places can no longer be used for parking, the loss is equivalent to an expropriation by the State. In urgence of this contention, plaintiff, in his voluminous brief, cites many cases dealing with the taking of property by a public body that entitled the property *252 owner to compensation. All of these cases, however, are distinguishable from the instant one in that the public body actually took or expropriated some quantity of property of the private party, and therefore, the holdings are not applicable to the factual situation before us.
Plaintiff may still be allowed to recover under the Louisiana Constitution of 1974, Art. 1, ¶ 4, even though there was no "taking," if his property was "damaged" through actions of a public body. The jurisprudence interpreting this article and its predecessor has set out two requirements that must be met before recovery is allowed. First of all, the damages suffered must be special or peculiar and not general damages sustained by other similarly situated properties. Secondly, the damages suffered must be substantial. Department of Highways, State of Louisiana v. Bennie Capone, d/b/a Capone Cleaners, 298 So.2d 94 (La.App. 1 Cir. 1974); Reymond v. State of Louisiana, through the Department of Highways, 255 La. 425, 231 So.2d 375 (La.S. Ct.1970).
The evidence fails to show that the alleged damages suffered by plaintiff are special or peculiar to his property. The widening project covered 1.5 miles. All property owners along this stretch suffered the same inconvenience as plaintiff.
Plaintiff has not been denied ingress or egress to its property; these points of entrance and departure have been merely restricted for legitimate traffic safety reasons.
Plaintiff's loss of parking appears to be due to poor planning and failure to follow the laws and regulations relating to the construction and location of driveways that connect to state highways such as Masonic Drive. Plaintiff concedes in brief that the Department of Highways had the authority "to do what it did . . ." so we need not dwell on that question other than to say that we are convinced after viewing the appropriate legislation and regulations that defendant was exercising a state police power with legitimate public purpose. The original fourteen parking places were available only due to plaintiff's disregard of the fifth restriction of the Louisiana Department of Highways Standard Plan for Driveways which were promulgated by defendant pursuant to LSA-R.S. 48:344. The former provides in pertinent part that:
"(b) Generally no more than (2) combined entrances and/or exits shall be allowed any parcel of property the frontage of which is less than 200 feet."
* * * * * *
"(c) . . . The width of driveways for commercial establishments shall be governed by the angle at which the driveway intersects the highway. . . . When the angle of intersection is between sixty-one (61) degrees and ninety (90) degrees, the maximum width shall be thirty-five (35) feet."
* * * * * *
". . . The area between driveways and on either side of the driveways shall remain unimproved for vehicular travel or parking."
* * * * * *
"(e) The distance between the inner edges of entrance and exit shall not be less than ten (10) feet where they intersect either the right of way line or the road surface."
In the preface to the Standard Plan for Driveways is found the following statement:
"Actual work on driveway is not to begin until the application has been approved by the Department."
A review of the record indicates that plaintiff failed to secure the driveway permit required by the Department of Highways regulations, and further, that his parking lot layout did not conform to the standards set out above. We agree with the apparent conclusion of the trial court that plaintiff has no basis for compensation from defendant when all that defendant did was enforce laws and regulations for the public good that were in force prior to plaintiff's construction, laws which plaintiff is held to have had knowledge.
*253 We have already noted that plaintiff failed to prove the harm he suffered was different than that of other property owners along the affected 1.5 mile section of Masonic Drive and any inconvenience it has suffered we consider to be damnum absque injuria. We further hold that this loss is a direct result of plaintiff's own fault in failing to comply with the appropriate laws and regulations in the original planning of its complex.
The next issue we must consider is whether the trial court properly awarded plaintiff two thousand nine hundred thirteen and No/100 ($2,913.00) dollars for alleged damages to its drainage system. In the specification of damages found in plaintiff's petition, plaintiff sought this sum for plumbing repairs.
At the trial, plaintiff introduced evidence in an attempt to prove that in the course of the street widening project, drainage pipes connecting the complex's swimming pool to the highway drainage system were rendered inoperable. The trial judge apparently concluded that plaintiff proved the stoppage of the drain was caused by defendant's activities, and we are in accord with this finding. However, we are unable to agree with the trial judge that this loss is compensable. Again, as with the loss of parking, plaintiff was required to receive a permit prior to connecting its facility with the highway drainage system.
The applicable statute, LSA-R.S. 48:381, states in pertinent part:
"A. When not inconsistent with the purposes of state highways, the director may issue permits for the use and occupancy of the rights of way of state highways as follows: (1) For the installation, operation and maintenance of underground pipes, conduits or cables along or across the highways for the purpose of transporting or conveying fluids. . ..
B. All such installations shall be in accordance with the best modern practice and national underwriting standards and shall be so maintained. Permits shall be issued only to owners of the facility and shall be nonexclusive. Installations which will interfere with the proper operation and maintenance of highways are expressly prohibited.
C. No installation may be made except upon the explicit condition that the owner thereof shall, at no cost to the department, remove or relocate the facility when that is necessary to permit the widening, relocation or other improvement of the highway, . . .."
During the course of the trial, the Department of Highways' official responsible for the issuing of such permits testified that the highway drainage system was not equipped for the drainage of swimming pools and that such a permit would not have been granted. As given in quoted sections A. and B. above, permits are not granted for installations that would interfere with the highway system. Further, even had plaintiff complied with the prescribed procedure and received a permit, section C. unequivocably states that such permits are conditioned upon the applicant agreeing to absorb the cost for removal or relocation of the facility if highway improvements warrant such action. Therefore, we find the trial judge erred in granting the plaintiff compensation for the plumbing repairs, and we accordingly reverse that portion of his judgment.
Incidental to these main issues, we must also consider the trial judge's awards to plaintiff's expert witnesses. Hab Monsour's expert witness fee was fixed at $650.00 and J. Elgy Norman's at $50.00. These sums were taxed as court costs which defendant was condemned to pay. Since we are denying all of plaintiff's claims for compensation, there remains no basis for taxing defendant for costs of court, and therefore, that portion of the trial court's judgment is reversed.
For the above given reasons, the judgment appealed from is affirmed as to the denial of plaintiff's claim for compensation for the lost parking places, and is reversed as to the awards for the damaged drain and the expert witness' fees. All costs are assessed against plaintiff.
*254 AFFIRMED IN PART, REVERSED IN PART.
DOMENGEAUX, J., concurred in the result only.