844 So.2d 905 (2003)
Rudy Dean CHANDLER d/b/a St. Helena Grocery
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. 2002 CA 1410.
Court of Appeal of Louisiana, First Circuit.
March 28, 2003.
Rehearing Denied May 30, 2003.
*907 Gary C. Ethridge, Baton Rouge, for Defendant-Appellant State of Louisiana, Dept. of Transportation and Development.
Mary E. Heck Barrios, Denham Springs, for Plaintiff-Appellee Rudy Dean Chandler d/b/a St. Helena Grocery.
Before: PARRO, MCDONALD, and CLAIBORNE,[1] JJ.
CLAIBORNE, J.
The State of Louisiana, Department of Transportation and Development (DOTD), appeals the trial court's granting of a preliminary injunction enjoining it from removing a portion of a concrete driveway of a commercial establishment located on the DOTD right-of-way. We find the preliminary injunction was improperly issued, and the decision of the trial court is reversed.

FACTS
Ray Miers owned the property located at 40240 Louisiana Highway 16 (Hwy.16) in St. Helena Parish, Louisiana. The property consists of a lot 280 feet wide and 300 feet deep. The property contains a commercial establishment known as St. Helena Grocery. During the time Miers owned the property, the driveway and parking lot for the store were composed of aggregate, and the width of the driveway ran further than the frontage of the entire store, which allowed access to Hwy. 16 from nearly the entire width of the property adjoining the highway.
Sometime during 1996 or 1997, Hwy. 16 was widened and resurfaced. Sand Ridge Construction performed the widening and resurfacing project in the area in front of St. Helena Grocery.[2] Gary Thomas, owner of Sand Ridge Construction, testified that during the project, he laid two 90-foot sections of pipe in front of St. Helena Grocery. According to Thomas, the store had two driveways, each about 80 feet wide. (The discrepancy in the dimensions was explained by pointing out that each pipe extended a little farther on each end beyond the width of the driveway.) Thomas indicated that after the pipe was laid, it was covered with aggregate to allow ingress and egress into the parking lot. Between these two 80-foot driveways was a small opening of about 4-5 feet, which was filled in prior to DOTD's accepting the project. Thomas testified this section was filled in on a weekend and not by his company, but he did point this out to DOTD prior to acceptance of the completed work. According to Thomas, he made DOTD aware of the width of the driveway in front of St. Helena Grocery.
Ray Miers, who had sold St. Helena Grocery to Rudy Dean Chandler in 1997, testified that when the Hwy. 16 project was completed, his driveway was essentially as wide as it was before Hwy. 16 was widened and resurfaced. Following completion of the highway project, the width of the driveway allowed for access between Hwy. 16 and the parking lot for nearly the entire width of the property adjacent to the highway. At no time was Miers ever informed by DOTD that the driveway did not comply with DOTD regulations, which *908 only allow for driveways with a width of 35 feet for commercial establishments.
About two months after Chandler bought the property from Miers, he paved the driveway and parking lot with concrete. Some of the concrete placed by Chandler covered a part of the driveway between his property and the hard-surfaced highway, so that it was on the highway right-of-way. Chandler testified that before he paved the driveway, it had a solid front for the entire width of the property, and that this had been its configuration since he was "a little boy." At the time Chandler had the parking lot paved, he was not aware of any requirements from DOTD that he needed a permit to do work on his driveway or that there existed any specifications for such construction. Chandler did not know he needed a permit for his new driveway until several months after the concrete was poured, when someone from DOTD asked Chandler if he had a permit for his driveway. He was subsequently told by an employee of DOTD to apply for a permit.
After Chandler submitted a permit application dated September 30, 1997, for his already existing driveway, he discovered that it would cost approximately $25,000 to $26,000 to bring his driveway into compliance with DOTD regulations. Chandler then investigated other commercial establishments along Hwy. 16 and discovered several businesses whose driveways exceeded the 35-foot-width requirement. Chandler presented evidence of other businesses in the vicinity whose driveways exceeded the 35-foot rule. In one case he measured two culverts of 108 feet, each separated by a 30-foot span. One business had a driveway 200 feet wide, and another had 70-foot-wide driveways. He measured the driveway in front of another business and found it also was 200 feet wide. Another business had a 95-foot-wide driveway and a 75-foot-wide driveway. Another had a 55-foot-wide driveway, as did a church. Another had a 70-foot-wide driveway. No remedial construction in progress was noticed on any of them. (This evidence was allowed by the trial judge on the issue of selective enforcement discussed below.)
Chandler never brought his driveway into compliance with DOTD regulations. On December 4, 1998, Chandler received a letter from DOTD requesting he contact DOTD to discuss corrective measures for his driveway. Several conversations took place between Chandler and DOTD representatives, but no agreement was reached on a remedy. In a letter dated February 11, 1999, Chandler was informed that his driveway was in violation of DOTD standards and on February 22, 1999, DOTD would be removing the portions of the driveway exceeding the allowable width.
On February 21, 1999, Chandler filed a petition seeking to enjoin DOTD from destroying or damaging the parking lot of St. Helena Grocery. Chandler claimed DOTD's planned action of breaking up his parking lot would cause immediate and irreparable injury, consisting of physical damage to his property and loss of revenue and income from his business, St. Helena Grocery. A temporary restraining order was granted prohibiting DOTD from entering Chandler's property.
Following a hearing, the trial court granted a preliminary injunction against DOTD. In oral reasons for judgment the trial court stated that it was the burden of the state to inform property owners and contractors of applicable driveway regulations prior to DOTD performing any construction work on the roadway.
DOTD appeals the judgment of the trial court. In its assignments of error, DOTD contends that the state does not have the burden of informing property owners and *909 contractors of applicable driveway regulations prior to performing any construction work on the roadway. DOTD also argues that the trial court erred in granting Chandler's request for a preliminary injunction enjoining DOTD from entering Chandler's property to perform any work thereon.

APPELLATE JURISDICTION
Chandler argues in his brief that the issuance of a preliminary injunction is an interlocutory judgment that causes no irreparable injury to the state, and thus may not be appealed. Although Chandler did not answer the appeal, we note appellate courts have a duty to examine subject matter jurisdiction sua sponte when the parties do not raise the issue. McGehee v. City/Parish of East Baton Rouge, XXXX-XXXX, p. 3 (La.App. 1st Cir.9/12/01), 809 So.2d 258, 260. Thus Chandler was not required to raise the question of appellate jurisdiction by answer to the appeal or by any other formality, and the question is properly before the court.
Louisiana Code of Civil Procedure article 3612 provides that "[a]n appeal may be taken as a matter of right from an order or judgment relating to a preliminary or final injunction." A party aggrieved by a judgment either granting or denying a preliminary injunction is entitled to an appeal. Country Club of Louisiana Property Owners Association, Inc. v. Dornier, 96-0898, p. 2 n.1 (La.App. 1st Cir.2/14/97), 691 So.2d 142, 144 n. 1. Accordingly, an appeal may be taken by DOTD from the trial court's judgment granting Chandler's petition for a preliminary injunction.

LAW APPLICABLE TO PRELIMINARY INJUNCTIONS
A preliminary injunction may be issued during the pendency of an action for a permanent injunction on a prima facie showing that the petitioner is entitled to the relief sought, that he will prevail on the merits, and that the potential losses are those for which money damages are inadequate or are incapable of measurement by pecuniary standards. See La. Code Civ. P. art. 3601; City of Donaldsonville v. Louisiana Gambling Control Board, 99-1582, p. 3 (La.App. 1st Cir.6/23/00), 764 So.2d 339, 342, writ denied, 2000-2257 (La.10/27/00), 772 So.2d 654. The jurisprudence interpreting Article 3601 establishes that, while the trial court has broad discretion in deciding whether to grant injunctive relief, injunction is an extraordinary remedy and should only issue where the party seeking it is threatened with irreparable loss without adequate remedy at law. City of Donaldsonville, 99-1582 at p. 3, 764 So.2d at 342. A showing of irreparable injury is not necessary when the deprivation of a constitutional right is involved. Brennan v. Board of Trustees for University of Louisiana Systems, 95-2396, p. 6 (La.App. 1st Cir.3/27/97), 691 So.2d 324, 328. Moreover, there is no need to prove irreparable harm when the petitioner alleges the defendant is acting in direct violation of prohibitory law. Paradigm Insurance Company v. Louisiana Patient's Compensation Fund Oversight Board, 95-1727, p. 4 (La.App. 1st Cir.9/27/96), 680 So.2d 783, 785. A party must make a prima facie showing that he will prevail on the merits of the suit. City of Donaldsonville, 99-1582 at p. 3, 764 So.2d at 342. Before issuing a preliminary injunction, the trial court should consider whether the threatened harm to the plaintiff outweighs the potential for harm or inconvenience to the defendant and whether the issuance of the preliminary injunction will disserve the public interest. Freeman v. Treen, 442 So.2d 757, 763 (La.App. 1st Cir.1983).

*910 AUTHORITY OF DOTD
DOTD raises as issues whether it has the authority to regulate entrances to and exits from private property adjacent to the rights-of-way for state highways, and whether it has the authority to order removal of a private driveway constructed on the right-of-way of a state highway in violation of DOTD's rules and regulations and/or of the driveway construction permit.
La. R.S. 48:344 provides as follows:
Entrances to and exits from private properties adjacent to the rights-of-way of state highways may be regulated, prohibited, or abolished in the interest of the safety of the traveling public. The chief engineer of the Department of Transportation and Development, from time to time, shall prepare and promulgate descriptions and illustrations of various types and styles of entrances and exits consistent with this purpose and shall issue permits of necessity and convenience for the installation of entrances and exits in accordance with its promulgated regulations and standards. The department may apply to the courts for such process as may be necessary to make the provisions of this Section effective.
The plain words of the statute make it apply to the setting of standards and issuance of permits, as well as to the regulation, prohibition and abolishment of entrances and exits. It is not self-executing with respect to its enforcement. That is, DOTD is relegated to the courts "to make the provisions of this Section effective." This statute must be read together with La. R.S. 48:347, which provides in part as follows:
A. The department may apply to the court for any process necessary to prevent the installation of any structure, sign, obstacle, object, deposit, or thing within the limits of a highway contrary to this Chapter or any lawful regulation issued hereunder.

* * *
C. Whenever any of the things described in Subsection A of this Section are found to exist within the limits of a highway, the department may summarily remove and dispose of it at the expense of the person responsible therefor. If it retains apparent value, the owner shall be notified, orally or in writing, to remove it within five days or such other period as may be agreed upon. If the owner be unknown or cannot be found, a written notice shall be affixed to the object setting forth that it must be removed within a period not less than five days from the date specified. Failure to remove within the specified period operates as a forfeiture of all rights thereto and the department may remove the object for its own use, or dispose of it at private or public sale, or destroy it, or dispose of it in any manner. The owner and any other person responsible therefor remains liable for any damage to public property or expenditure of highways funds resulting from the installation or removal of such things.
This statute gives DOTD specific authority to remove "any structure, sign, obstacle, object, deposit, or thing" which is in violation of Chapter 1 of Title 48 of the Revised Statutes or any lawful regulation issued thereunder. The authority is sufficiently broad to include a concrete driveway or parking lot on the highway right of-way.
Entrances to, and exits from, private properties adjacent to rights-of-way of state highways may be regulated, prohibited or abolished in the interest of the safety of the traveling public. La. R.S. 48:344. The state clearly has control over what is *911 placed on the state right-of-way. According to La. R.S. 48:347C, DOTD has the authority to remove any structure, sign, obstacle, object, deposit, or thing from the highway right-of-way at the expense of the owner.[3]
The main thrust of Chandler's argument is that the concrete he placed on the state right-of-way should be allowed to remain on the right-of-way, because the width of the driveway has always exceeded the DOTD regulations. He argues the fact that the composition of the driveway was changed from aggregate to concrete should not make any difference. Gary Thomas, a road construction contractor, testified that as a sub-contractor working on the DOTD project, he installed two 90-foot sections of pipe or culverts (for two 80-foot-wide driveways) at the subject location under supervision from the highway department. The space between the driveways was filled in by someone else (presumably the land owner) so that it made a single solid drive. Thomas brought this to the attention of the highway department before the work was actually accepted.
Chandler testified that bringing his driveway into compliance with DOTD regulations would cost an estimated $25,000 to $26,000. Chandler also alleged that he would have an interruption of his business income, but no evidence was presented as to whether Chandler's business would be closed or what length of time such closure would take place.
According to the testimony of Robert Roth, the DOTD district administrator for the Hammond district, the St. Helena Grocery functions as a truck stop and generates a fair amount of heavy truck traffic. Truck traffic entering the highway at that location without being properly controlled could pose a sight obstruction problem and hazard for motorists on the highway or for motorists attempting to access the driveway. Roth also indicated when an area on the right-of-way was paved, the area could be used as a parking lot, but such structures were never authorized to be placed on the state property. Photographs were introduced showing a tractor-trailer parked on the driveway extending over the highway right-of-way.

SELECTIVE ENFORCEMENT OF REGULATIONS
Although Chandler demonstrated that numerous violations of the regulations existed in the vicinity of his property, apparently with no effort on the part of DOTD to enforce its own rules except as to his property, there was no showing that any discrimination was intentional, arbitrary and purposeful. Roth testified that the construction contractor and DOTD do not have the capability to correct encroachments by driveways composed of aggregate. Hard-surface driveway encroachments would be corrected during highway construction, in that the driveways would not be re-connected to the highway in their original condition. According to Roth, correction of an aggregate driveway encroachment by DOTD would require removal of the aggregate and the planting of grass. Roth said that such measures are beyond the scope of the highway construction projects and that DOTD does not have the resources to correct such encroachments. There is nothing in the record to show that the selective application of the rules was intentionally directed at Chandler for improper reasons. In the absence of such a showing, it is not *912 a defense to a violation of a rule or regulation that other persons similarly situated are equally guilty.
By statute, the state has the authority to regulate what structures are placed on its right-of-way. Based on our review of the record, we find Chandler did not present any evidence that indicated DOTD's actions would cause him irreparable loss or were prohibited by law. To the contrary, DOTD is authorized by statute to remove certain items that have been placed on the highway right-of-way in contravention of its regulations. The portion of Chandler's driveway exceeding the 35-foot-width limitation is considered such a violation. Under the facts presented, plaintiff was not entitled to the issuance of a preliminary injunction.

CONCLUSION
Rudy Dean Chandler failed to satisfy the burden of proof necessary to support the issuance of a preliminary injunction. Therefore, the judgment of the trial court granting the preliminary injunction is reversed. All costs associated with this appeal are assessed to Rudy Dean Chandler.
REVERSED AND REMANDED.
NOTES
[1] Judge Ian W. Claiborne, retired, is serving as judge pro tempore by special assignment of the Louisiana Supreme Court.
[2] Sand Ridge Construction was a subcontractor for Diamond B Construction, which was awarded the contract by DOTD to widen and resurface the section of Hwy. 16 that ran adjacent to the St. Helena Grocery location.
[3] See also Skye Realty Company v. State of Louisiana through Department of Highways, 345 So.2d 249 (La.App. 3d Cir.1977).