STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**22-205**

SOUTHLAND ENGINE COMPANY, INC., ET AL.

VERSUS

STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF
TRANSPORTATION AND DEVELOPMENT, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2019-0998
HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**VAN H. KYZAR
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Van H. Kyzar, Jonathan W. Perry, and Sharon Darville Wilson,
Judges.

**AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED.**

Kevin M. Dills
Davidson, Meaux, Sonnier, McElligott,
Fontenot, Gideon & Edwards, L.L.P.
P. O. Box 2908
Lafayette, LA 70502-2908
(337) 237-1660
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Southland Engine Company, Inc.
    Milton Lynn Pesson, Jr.
    Glenda Pesson
    Lynn & Glenda Pesson Properties, Broussard, LLC

Lawrence E. Marino
Clearley W. Fontenot
Daniel J. Phillips
Oats & Marino
100 E. Vermilion Street, Suite 400
Lafayette, LA 70501
(337) 233-1100
COUNSEL FOR DEFENDANT/APPELLEE:
    State of Louisiana
    Department of Transportation & Development

**KYZAR, Judge.**

The plaintiffs, Southland Engine Company, Inc., Milton Lynn Pesson, Jr., Glenda Pesson, and Lynn & Glenda Pesson Properties, Broussard, LLC, appeal from the trial court's grant of summary judgment in favor of the defendant, the State of Louisiana, through the Department of Transportation and Development, denying their claims of negligence and inverse condemnation. For the reasons set forth, we affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

This matter stems from the Department of Transportation and Development's (DOTD's) State Project No. H.010620, US 90 (I-49 South) Albertson's Parkway to Ambassador Caffery, Design Build Contract (the project), for the upgrade of a section of U.S. Highway 90 (Highway 90) in Lafayette Parish to meet interstate standards in preparation for its future transformation to Interstate 49 South. The project involved the reconfiguration of Highway 90 from a four-lane, accessible highway to a six-lane control of access freeway, with ingress and egress provided via two-lane, one-way frontage roads. The end result of the project is that motorists are no longer able to directly access Highway 90 from local roads, but rather by entrance and exit ramps located on the frontage roads running on either side of the freeway. Additionally, the frontage roads are only accessible at periodic interchanges where the interchanges intersect local roads.

DOTD entered into a design-build contract with James Construction Group, LLC (James) on December 12, 2013. Under a design-build contract, the design-builder is "the entity contractually responsible for delivering the project design and construction." La.R.S. 48:250.3(A). After James was awarded the design-build contract, the project's plans were prepared by C.H. Fenstermaker & Associates,

L.L.C. and then approved by DOTD. Construction on the project was performed by James and its subcontractors.

Although Highway 90 runs east/west through Louisiana, the section involved in the project runs north/south. The road at issue in this matter is a stretch of Louisiana Highway 182[1] (Highway 182) that runs parallel to Highway 90 for approximately three-quarters of a mile on the outskirts of Broussard. From the south, Highway 182, a north/south highway, crosses under an elevated section of Highway 90 that passes over the BNSF railroad (the railroad), parallels Highway 90, and then intersects with Albertson's Parkway, an east/west road. Approximately 200 feet east of this intersection, Albertson's Parkway also intersects with Highway 90, after which its name changes to St. Nazaire Road. Prior to the project, these two intersections were controlled by traffic signals, and thus, were accessible from any direction. Furthermore, the southbound lane of Highway 90 contained an exit/entrance to Highway 182 located approximately midway between Albertson's Parkway and the railroad.

Milton Lynn Pesson, Jr. is the owner-operator of Southland Engine Company, Inc. (Southland), a family-owned business which sells and repairs outdoor power equipment for its private, commercial, and governmental clientele. In 2014, Lynn & Glenda Pesson Properties, Broussard, LLC (Pesson Properties), which is owned by Mr. Pesson and his wife, Glenda, purchased property located adjacent to the stretch of Highway 182 at issue to build a Broussard location of Southland. The location was chosen because it was located on the outskirts of Broussard and was easily accessible by its customers traveling north on Highway 182 from Cade, St. Martinville, and New Iberia. After construction was completed, Southland opened

---

[1] Highway 182 is also known as Main Street in Broussard.

2

in March 2015. The location, in addition to being a showroom for outdoor power equipment, also served as a drop-off point for equipment needing repairs. As all repairs were performed at Southland's main Lafayette location, inoperative equipment was picked up daily from the Broussard location and then returned after the repairs were completed.

Although preliminary construction on the project began in February 2014, construction on the stretch of Highway 182 at issue began in August 2017, when the southbound lane was taken down to the roadbed and left in that condition for approximately one year. Although the northbound lane remained operational as a one-way travel lane, access to Little Woods Road, the road on which Southland's two entrances were located, was via a narrow barricaded entrance provided by James across the lower roadbed of the southbound lane. This required Southland's customers/suppliers to make a ninety-degree turn from the northbound lane while hauling equipment in large trailers or driving large trucks. Additionally, the direction of traffic utilizing the northbound lane changed frequently, as did the placement of cones and barriers used to direct and restrict traffic. Due to a large decrease in business caused by the construction, Southland's Broussard location closed in September 2018, and was listed for sale or lease in October 2018. DOTD accepted the completed project on October 17, 2019.

On February 13, 2019, prior to the project's completion, Southland and the Pessons filed suit against DOTD and James, seeking damages for the losses they incurred due to the project and just compensation for DOTD's inverse condemnation of their property. In response to James's and DOTD's dilatory exceptions of vagueness, Southland and the Pessons filed a supplemental and amending petition to more particularly allege how DOTD's and James's work on the project "adversely affected access to [their] business, among, other things, which [had] resulted in

3

significant loss and damages" to them. Southland and the Pessons later filed a second supplemental and amending petition to add Pesson Properties as a plaintiff (all collectively referred to as Plaintiffs).

On February 25, 2021, DOTD moved for summary judgment, arguing that it was entitled to judgment due to Plaintiffs' inability to prove at trial "that access to their property was substantially impaired by the construction work on U.S. Highway 90; that a landowner is entitled to compensation for merely inconvenient or more circuitous access; or that any such impairment was not common to all landowners on the project." DOTD attached the following evidence in support of its motion: the affidavit of Gordon Nelson, the overseeing project manager on the project from June 20, 2018 through October 17, 2019; Mr. Pesson's deposition; Plaintiffs' petition, as well as the petitions for damages and inverse condemnation filed by SDI of Broussard, LLC/Real Estate Partners of Broussard, LLC; Mike's Marine Service, LLC; Leonards Restaurant Group, LLC, d/b/a Buck's Crawfish Co., and Laxmi of Broussard, LLC, all of whom operated businesses located on this stretch of Highway 182; and the affidavit of Joshua L. Hoffpauir, Architect, who prepared a map identifying the locations of the five businesses on the stretch of Highway 182 at issue. James also filed a motion for summary judgment, arguing its immunity from liability pursuant to La.R.S. 9:2771 because it fully complied with the design plans and specifications and because Plaintiffs do not have a cause of action against it under La.R.S. 9:5624 and for inverse condemnation.

Plaintiffs opposed both motions, arguing that genuine issues of material fact existed as to whether access to Southland was substantially impaired and as to whether the actions of DOTD/James caused them more than mere inconvenience. They further objected to Mr. Nelson's affidavit because he did not become project manager until June 20, 2018. Thus, they argued that his statements pertaining to

4

anything that occurred prior to that date were not based on personal knowledge. In support of their opposition, Plaintiffs introduced the affidavits of Mr. Pesson, Scott Babin, the general manager of Mike's Marine Service, LLC, and Dewitt C. David, a commercial real estate agent; the depositions of Mr. Babin, Mr. Nelson, Bill Oliver, DOTD's Lafayette District Administrator (ret.), and an email indicating that James was subjected to $10,000.00 per day liquidated damages due to delays caused by a subcontractor providing asphalt work on the project.

Following a January 18, 2022 hearing on the motions, the trial court orally granted DOTD's motion, finding that "as a matter of law, under the facts that are presented to me, this does not amount to substantial impairment, as described through the *Constance* case." The trial court further took James's motion under advisement. A written judgment granting summary judgment in favor of DOTD was rendered by the trial court on January 27, 2022. On January 28, 2022, the trial court issued a ruling on James's motion, granting its motion "as to all theories of recovery and causes of action asserted by Plaintiff[s] with the exception of the cause of action for damages arising out of the negligence of James in reducing [Highway 182] to a single lane of travel for an unnecessary and unreasonable period of time." Although the ruling indicated that a judgment would be prepared by James and signed on presentation, that judgment is not included in the appellate record.

On appeal, Plaintiffs raise two assignments of error:

1.    The trial court erred in granting summary judgment as a matter of law on Southland's inverse condemnation claim against [DOTD] because the "substantial interference" standard is not and should not be so narrowly construed to require a permanent and complete loss of a recognized property right.

2.    The trial court further erred in dismissing the general negligence claims asserted against [DOTD]. Specifically, claims were asserted against both [DOTD] and James Construction based on the delays associated with repairing Highway 182/East Main

5

Street after one lane was removed in August of 2017, among other things.

**OPINION**

Summary judgment is a procedural device properly used when there is no genuine issue of material fact. *Murphy v. Savannah*, 18-991 (La. 5/8/19), 282 So.3d 1034; La.Code Civ.P. art. 966. Appellate courts review summary judgments *de novo* using the same criteria that governs the trial court's determination of whether summary judgment is appropriate, i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Wright v. La. Power & Light*, 06-1181 (La. 3/9/07), 951 So.2d 1058; La.Code Civ.P. art. 966(A)(3).

A material fact is one that "potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Hines v. Garrett*, 04-806, p. 1 (La. 6/25/04), 876 So.2d 764, 765 (per curiam). "A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate." *Smitko v. Gulf S. Shrimp, Inc.*, 11-2566, p. 8 (La. 7/2/12), 94 So.3d 750, 755.

At the hearing on the motion, the burden of proof rests with the mover; however, if the mover will not bear the burden of proof at trial, he need only point out "the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La.Code Civ.P. art. 966(D)(1). Once this occurs, the burden shifts to "the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

6

### *Assignment of Error Number One*

In their first assignment of error, Plaintiffs argue that the trial court erred in granting summary judgment in favor of DOTD on their inverse condemnation claim. Although Plaintiffs base their argument on the trial court's interpretation of the "substantial interference" standard as applied to a property owner's right of access, we affirm on other grounds.

Article 1, Section 4(A) of the Louisiana Constitution of 1974 provides that "[e]very person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property." However, these rights are "subject to reasonable statutory restrictions and the reasonable exercise of the police power." *Id.* Private property "shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit." La.Const. art. 1, § 4(B)(1). As used in Section 4(B)(1), private property may be taken for public purposes involving roads that are "available to the general public." La.Const. art. 1, § 4(B)(2)(ii). Accordingly, the state, in the exercise of its police power, may expropriate private property for a public purpose providing the landowner receives just compensation for his loss.

Even in the absence of an expropriation action, a landowner may bring an action for inverse condemnation when his property has been taken or damaged by a public entity. *Constance v. State, through Dep't of Transp.*, 626 So.2d 1151 (La.1993), *cert. denied sub nom. LeBlanc v. La. Dep't Transp. & Dev.*, 512 U.S. 1219, 114 S.Ct. 2706 (1994). In *Constance*, the supreme court, quoting from *Reymond v. State, Through the Department of Highways*, 255 La. 425, 231 So.2d 375 (1970), stated:

> The liability of a public body in such case, however, has been limited "to those instances where there is a physical taking or damage to property or a special damage peculiar to the particular property and

7

not general damage sustained by other property similarly located." *Reymond*, 231 So.2d at 383. In assessing that special damage, it must be determined "whether that damage is not suffered by those in the general neighborhood—that is, whether the damage is peculiar to the individual who complains." *Id.* at 384. Therefore, this Court has concluded that damages such as the noise of traffic, a less pleasant view, and a circuitous or more inconvenient route to petitioner's property, even when these factors resulted in an actual diminution of market value of the property, were not in themselves special damages and were not recoverable. The *Reymond* Court found that "[d]amages which cause discomfort, disturbance, inconvenience, and *even sometimes financial loss* as an ordinary and general consequence of public improvements are not compensable, and are considered damnum absque injuria [loss without injury in the legal sense]." *Id.*

Furthermore, it has long been recognized that a public body has the right, under its police power, to divert traffic without subjecting itself to liability. *Ramelli v. City of New Orleans*, 233 La. 291, 96 So.2d 572, 574 (1957). While recognizing that commercial property owners were inconvenienced by the narrowing of a major traffic artery to construct an overpass and by the diversion of traffic some 3000 feet, the *Ramelli* Court noted that the inconvenience was common to all property owners within the same vicinity. Accordingly, the Court affirmed the ruling of the trial court that the plaintiffs had sustained a loss without an injury in the legal sense. Similarly, other jurisdictions have concluded that a property owner has no protectable interest in such traffic flow, as opposed to access. William B. Stoebuck, Nontrespassory Takings in Eminent Domain 70 (1977).

*Id.* at 1156 (alterations in original).

In determining whether private property has been taken or damaged by a public entity, courts consider a three-pronged analysis: (1) whether a "person's legal right with respect to a thing or an object has been affected[;]" (2) "whether the property, either a right or a thing, has been taken or damaged, in a constitutional sense[;]" and (3) "whether the taking or damaging is for a public purpose under Article I, § 4." *State, Through Dep't of Transp. & Dev. v. Chambers Inv. Co.*, 595 So.2d 598, 603 (La.1992).

Pursuant to the exercise of the reasonable police power granted to it by La.R.S. 48:301, DOTD, acting alone or in coordination with local authorities or federal, state, or local agencies, "may plan, designate, establish, regulate, vacate, alter,

8

improve, maintain and provide controlled-access facilities for public use whenever they determine that traffic conditions, present or future, justify such special facilities." It further has the authority to "design any controlled-access facility and regulate, restrict, or prohibit access so as to best serve the traffic for which it is intended." La.R.S. 48:302. "No person has any right of access to, from or across controlled-access facilities to or from abutting lands, except at the designated points at which access is permitted upon the terms and conditions specified from time to time." *Id.*

Additionally, DOTD is authorized to construct new controlled-access facilities and to incorporate existing roadways into those facilities. La.R.S. 48:304. This includes the authority to eliminate the intersection "at grade of controlled access facilities with existing state and parish roads or municipal streets by grade separation or service roads or by closing off roads and streets at the right of way boundary line of the controlled-access facility." *Id.* Once a controlled-access facility is established, "no highway or street which is not part thereof shall intersect it at grade[]" or open into or connect to it absent DOTD's approval. *Id.* Moreover, DOTD has the authority to alter and vacate local service roads when developing a controlled-access facility. La.R.S. 48:306.

There is no doubt that Plaintiffs, as the lessee/owners, have a property right to access Highway 182 from their property and that this is the right at issue. *Constance,* 626 So.2d 1151 (Dennis, J., concurring); *State ex rel. Gebelin v. Dep't of Highways,* 200 La. 409, 8 So.2d 71 (1942); *Hay's Western Wear, Inc. v. State, Dep't of Transp. & Dev.,* 624 So.2d 975 (La.App. 3 Cir. 1993), *writ denied,* 93-2767 (La. 1/7/94), 631 So.2d 452, *cert. denied,* 513 U.S. 819, 115 S.Ct. 79 (1994). It is further not contested that the alleged taking of this property right was for a public purpose under La.Const. art. 1, § 4, as it involved DOTD's redesign of a public road. Thus,

9

DOTD's argument in support of summary judgment centered on Plaintiffs' inability to prove that their property right, access to their property, was damaged in a constitutional sense.

In determining whether Plaintiffs' access was so damaged, we must consider La.Civ.Code arts. 667 and 668 because "although, in principle, a landowner may use and enjoy his property as he sees fit," that right is subject to limitations. *Chambers*, 595 So.2d at 604. As the supreme court pointed out, these articles impose reciprocal obligations on the landowner and his neighbor in that Article 667[2] restricts the landowner from exercising his right in a manner damaging to his neighbor, while Article 668[3] requires the neighbor "to tolerate certain inconveniences" arising from the landowner's lawful use of his property. *Id.* Therefore, a finding of liability turns on "whether the State's construction activities resulted in inconveniences that must be tolerated by the claimant" or "resulted in more serious inconveniences or interference that may be suppressed under Article 667." *Id.*

Thus, to recover under La.Civ.Code art. 667, a plaintiff must prove that he or she suffered personal injury or physical damage to their property, or absent these types of damages, present proof "of some type of excessive or abusive conduct" on the part of DOTD. *Id.* at 605. Furthermore, "[d]amage that is not peculiar to the property at issue but is the type of general damage sustained by other similarly

---

[2] Louisiana Civil Code Article 667 provides in part, as follows:

Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.

[3] Louisiana Civil Code Article 668 provides in part, as follows:

Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.

situated property owners is not compensable." *Lodestro Co. v. City of Shreveport*, 33,901, p. 5 (La.App. 2 Cir. 9/27/00), 768 So.2d 724, 727. As stated in *Reymond*, 231 So.2d at 383-84, "The criterion for assessing the special damage suffered by a property owner because of the construction of a public project under eminent domain is whether that damage is not suffered by those in the general neighborhood—that is, whether the damage is peculiar to the individual who complains."

Furthermore, this court, in *Hay's Western Wear*, 624 So.2d at 977, stated:

> Our jurisprudence is firmly established that damages caused by rerouting or diversion of traffic from one roadway to another are not compensable where the means of access to the premises are not substantially impaired or access is impaired on a temporary basis and/or the inconvenience to the owner is not peculiar to him but to the general public at large. *Dickie's Sportsman's Centers* [*v. Dep't of Transp.*, 477 So.2d 744 (La.App. 1 Cir.), *writ denied*, 478 So.2d 530 (La.1985)]. Furthermore, points of entry and departure may be restricted for legitimate traffic safety reasons. *Skye Realty Co. v. State Department of Highways*, 345 So.2d 249 (La.App. 3rd Cir.1977).

After reviewing its summary judgment evidence, we find that DOTD has satisfactorily pointed out an absence of factual support for Plaintiffs' claim that the inconvenience caused by the construction was special or peculiar to them and not that suffered by other similarly situated property owners along the stretch of Highway 182 at issue.

Based on the map prepared by Mr. Hoffpauir, there are five businesses, including Southland, located on Highway 182. The remaining four businesses are Mike's Marine Service, LLC, Hampton Inn (Laxmi of Broussard, LLC), Buck's Crawfish (Leonards Restaurant Group, LLC), and Sonic (SDI of Broussard, LLC/Real Estate Partners of Broussard, LLC). Like Southland, the owners of each of these businesses filed suit against DOTD and James to recover the lost business revenues they suffered as a result of the project's construction and just compensation

for the inverse condemnation of their properties resulting from Highway 90's redesign as a controlled-access facility.

With regard to the inverse condemnation claim, all five petitions alleged:

The Project's plan calls for two permanent closures/removals of lanes of traffic: (1) The removal/closure of the existing left-hand turning lane from St. Nazaire Road traveling Westbound turning onto Southbound East Main Street (La. Hwy. 182); and (2) Removal of the existing access point/exit from U.S. Highway 90 (East/Southbound) onto East Main Street (La. Hwy 182).

The petitions further stated that "[t]his aspect of the design substantially limits access to" their properties, with the effect that all of the properties were inversely condemned. Moreover, although all the petitions alleged that the removal of the direct access from the southbound lane of Highway 90 to Highway 182 had an impact on these businesses, Plaintiffs, Mike's Marine, Leonards Restaurant Group, and Laxmi of Broussard all alleged that the removal of this access point would have a "particularly detrimental impact" on their businesses and property values due to the difficulty faced by their customers in accessing their businesses.

As DOTD's evidence points out an absence of factual support for an essential element of Plaintiffs' claim, that the damage suffered by them was special or peculiar to their property, the burden shifted to Plaintiffs "to produce factual support sufficient to establish the existence of a genuine issue of material fact or that" DOTD was "not entitled to judgment as a matter of law." La.Code Civ.P. art. 966(D)(1).

After reviewing Plaintiffs' opposition evidence, we find that all of the complaints voiced by Mr. Pesson, concerning the construction phase of the project and the altered access to Highway 182 following the project's completion, were the same complaints made by Mr. Babin, the general manager of Mike's Marine, which is located just south of Southland on Highway 182. Moreover, these involve the

12

same complaints alleged against DOTD and James by the three remaining businesses.

Mr. Pesson and Mr. Babin both complained about the length of time that Highway 182 was reduced from a two-lane, two-way road to a one-lane, one-way road, the frequent changes in the direction of traffic flow and the confusion resulting therefrom, and the difficulty experienced by customers driving large trucks or pulling trailers in turning from the one-lane road through the narrow, barricaded openings leading to their businesses. Regarding their inverse condemnation claims, Mr. Pesson and Mr. Babin both complained that Highway 90's reconfiguration eliminated multiple access points to Highway 182.

Mr. Nelson, the project manager on the project from June 20, 2018 through October 17, 2019, testified that the inconvenience caused by the construction phase as well as the change in traffic patterns resulting from the completed project were the same for every business located on Highway 182 during his time on the project. Additionally, Mr. Oliver[4] testified that he learned of Highway 182's lengthy reduction from a two-lane road to a one-lane road from the business owners located thereon.

Based on the foregoing evidence, we find that Plaintiffs have failed to produce factual support sufficient to establish the existence of a genuine issue of material fact on the issue of whether the damage suffered by them as a result of the project was peculiar to their property, rather than the type of damage suffered by the other business located on Highway 182. The activities resulting from the project's construction phase, whether they resulted in inconveniences that must be tolerated

---

[4] Mr. Oliver testified that because this was a design-build contract, he was not in the line of authority for the project. He stated that his only involvement in the project was to coordinate some communications between the public and the parties responsible for the project since the Lafayette District lacked a public information officer during the project.

by Plaintiffs or interferences that need not be tolerated, were experienced by all of the businesses located on Highway 182. Furthermore, although Plaintiffs claim that they suffered damages peculiar to their property during the construction phase due to the difficulty customers experienced accessing their premises when driving large trucks or pulling trailers, this is the same damage alleged by Mr. Babin, the manager of Mike's Marine.

We, likewise, find that Plaintiffs have presented no evidence that would establish that the permanent loss of access suffered by them as a result of Highway 90's reconfiguration was special or peculiar to their property as all of the businesses located on this stretch of Highway 182 suffered the same altered access as a result of the finished project. Prior to construction, motorists traveling north from the Cade, St. Martinville, and New Iberia, could access the stretch of Highway 182 at issue by driving under Highway 90. Motorists traveling north on Highway 90 could exit at Albertson's Parkway and then turn right onto Highway 182, whereas motorists traveling south on Highway 90 could exit at Albertson's Parkway or exit directly onto Highway 182. Motorists traveling west on St. Nazaire Road prior to its change to Albertson's Parkway, could turn left onto Highway 182 after passing through the Highway 90 intersection. Motorists traveling east on Albertson's Parkway could turn right onto Highway 182, and motorists traveling east on St. Etienne Road could turn left onto Highway 182.

Following its reconfiguration, Highway 90 is now elevated over Albertson's Parkway, with the frontage roads connected by a U-turn (the north U-turn) under this section just prior to their intersections with Albertson's Parkway. This allows motorists traveling on either frontage road to access the opposite frontage road without traveling through two traffic-signal-controlled intersections. Heading south, the south frontage road connects to Highway 182 by a U-turn (the south U-turn) just

14

south of Mike's Marine, near the intersection of St. Etienne Road with Highway 182. Approaching Highway 90 from the south, Highway 182's northbound lane is now diverted onto the north frontage road prior to its intersection with Albertson's Parkway. Although the stretch of Highway 182 at issue still continues for the most part as a two-lane, two-way road, its southbound lane converts to a two-lane, one-way road past the south U-turn until it reconnects with the northbound lane on the eastern side of Highway 90. Just prior to this reconnection, the southbound lane connects to the north frontage road by another U-turn (the southeast U-turn). Due to the minimal distance between its intersections with Highway 182 and the south frontage road, Albertson's Parkway's east and west lanes are now divided by a raised median extending across the Highway 182 intersection. This precludes east and westbound traffic from turning left onto Highway 182, and north and southbound traffic on Highway 182 from crossing the intersection or turning left onto Albertson's Parkway.

As a result of the aforementioned changes, access to Highway 182 has been altered for all of these businesses. Motorists traveling north on Highway 182 would, after being directed onto the north frontage road, take the north U-turn onto the south frontage road and then the south U-turn onto Highway 182's northbound lane. Motorists traveling north on Highway 90 would exit onto the north frontage road and then travel this same route. Motorists traveling south on Highway 90 would exit onto the south frontage road and then take the south U-turn onto Highway 182's northbound lane. Motorists traveling east on St. Nazaire would turn left onto the south frontage road and then follow the same route. Motorists traveling west on Albertson's Parkway can still turn right onto Highway 182, and motorists traveling west on St. Etienne Street can still turn left onto Highway 182. As all of the landowners were affected equally by this altered access, we find that Plaintiffs have

15

failed to produce sufficient facts establishing a genuine issue of material fact regarding their claim of permanent loss of access as a result of the finished project.

Based on Plaintiffs' failure to establish that they would be able to satisfy their burden at trial of proving an essential element of their inverse condemnation claim and the reasonable police power granted to DOTD in the design and construction of Highway 90 as a controlled-access facility, we find that DOTD is entitled to judgment as a matter of law. Accordingly, the judgment of the trial court is affirmed as it concerns Plaintiffs' inverse condemnation claim.

*Assignment of Error Number Two*

In their second assignment of error, Plaintiffs argue that the trial court erred in dismissing their general negligence claims against DOTD based on the grounds of negligent delay. They argue that because the trial court denied James's motion for summary judgment as it related to negligent delay and considering that James blamed DOTD for the delay, genuine issues of material fact existed, which precluded the trial court's judgment in favor of DOTD on this issue. We agree.

In the portion of their petitions entitled "**La.R.S. 9:5624 Damages Resulting from a Public Project**[,]" Plaintiffs alleged sixteen actions on the parts of DOTD and James that were a direct and proximate cause of their damages. In two of the sixteen actions, they alleged the following:

. . . .

5.    The Defendants, DOTD and JAMES, in causing an unreasonable delay in construction process[.]

6.    The Defendants, DOTD and JAMES, in failing to stage the Project in such a manner so as to minimize the effect on Southland and its customers[.]

Plaintiffs further alleged:

13.

16

As is provided by LA. Rev. Stat. §§ 48.21, 48.92, 48:250.3, and 48:259, the DOTD is responsible for supervision and control over construction, improvements, and maintenance of highways; therefore, the DOTD is liable and responsible for the actions, omissions, commissions, negotiations, misrepresentations, negligent acts, fault or other actions or inactions of its or their agents, servants, employees, contractors and/or subcontractors utilized on the Project, and all such other persons or entities causing damages to Petitioners.

14.

Defendant, JAMES, which was employed by DOTD to execute the Project approved and implemented for public purposes, has done so in a manner that has caused undue and unreasonable damages to Petitioners, which are recoverable under Louisiana law. *See* LA. REV. STAT. § 9:5624.

Following the hearing on the motions for summary judgment, the trial court took James's motion under advisement. Thereafter, it issued a ruling, as follows:

After review of the causes of action asserted in Paragraph 10, the Court finds James has carried its burden to negate all essential elements of Plaintiff's [sic] claims and Plaintiff [sic] has failed to produce factual support sufficient to establish a material issue of fact, namely that the actions of James were in violation of the contract specifications as to the negligence claims as listed in Paragraph 10, with two exceptions. As to Item #5, "causing an unreasonable delay in construction process," and Item #6, "failing to stage the project in such a manner as to minimize the effect on Southland and its customers," material facts remain as to James' compliance with the contract.

Accordingly, Summary Judgment is **GRANTED** in favor of James as to all theories of recovery and causes of action asserted by Plaintiff [sic] with the exception of the cause of action for damages arising out of the negligence of James in reducing East Main to a single lane of travel for an unnecessary and unreasonable period of time.

Although Plaintiffs reference La.R.S. 9:5624[5] as a basis for their cause of action, that statute does not provide a stand-alone cause of action. Rather, this is the prescriptive statute applicable in inverse condemnation cases when a plaintiff alleges that his or her property has been damaged, rather than taken, for public purposes.

---

[5] Louisiana Revised Statutes 9:5624 provides, "When private property is damaged for public purposes any and all actions for such damages are prescribed by the prescription of two years, which shall begin to run after the completion and acceptance of the public works."

17

*Avenal v. State*, 03-3521 (La. 10/19/04), 886 So.2d 1085, *cert. denied*, 544 U.S. 1049, 125 S.Ct. 2305 (2005). However, even though we have already affirmed DOTD's motion for summary judgment as to the inverse condemnation claim, a plaintiff, pursuant to Louisiana's system of fact pleading, "may be granted any relief to which he is entitled under the pleadings and the evidence[]" as "long as the facts constituting a cause of action are alleged[.]" *Martin v. Thomas*, 21-1490, p. 6 (La. 6/1/22), 346 So.3d 238, 242-43. Thus, as long as the facts alleged in the two specified allegations constitute negligence by the State, the Plaintiffs may be entitled to such relief.[6]

In *Ardoin v. State, Department of Transportation and Development*, 96-63 (La.App. 3 Cir. 8/14/96), 679 So.2d 928, *writ denied*, 96-2280 (La. 11/15/96), 682 So.2d 775, this court dismissed DOTD's claims that it was not responsible for the actions of its contractor performing construction on U.S. Highway 167 in Ville Platte. Although the facts in that case differ from those at issue in that the construction there was performed pursuant to a design-bid-build[7] contract rather than a design-build contract, this court stated:

> Notwithstanding, DOTD maintains that the contractor performed all of the foregoing acts and, as such, DOTD should not be liable because the contractor exceeded the scope of the work as provided in its plans. DOTD asserts that it is not responsible for the activities of its contractor. This same type of argument was found to be without merit in *Moorhead v. State, Department of Highways*, 322 So.2d 330, 332-333 (La.App. 2 Cir.1975), where the second circuit stated:
>
>> The Department contends that if any construction work was done on plaintiff's property, it was not done by the Department, but was done by contractors, subcontractors, or utility companies over which the Department has no control and for whose activities it is not

---

[6] Pursuant to La.Const. art. 12, § 10(A), "Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property."

[7] In a design-bid-build contract, the work to be performed is designed by either DOTD or a hired consultant, after which the design is then let out as a public bid and constructed by the winner bidder.

responsible. Plaintiff established she was being disturbed in the possession and enjoyment of her property by persons and activities related to the highway construction project. The Department has responsibility for and supervision and control over construction, improvements and maintenance of highways. LSA--R.S. 48:21; 48:92. . . . The Department offered no evidence to support their contention that the activities complained of were done by parties over whom the Department had no control. . . . In the absence of evidence to the contrary it can only be assumed the highway construction work was being done by or at the direction of or under the control and supervision of the Department.

Further, Henry Maddox, the superintendent of Gilchrist Construction Company, unequivocally testified that DOTD provided him with the "set of plans" for the project. Also, the record substantiates that DOTD had an inspector at the construction site at all times. Therefore, we find this argument to be without merit.

*Id.* at 936.

In his affidavit, Mr. Nelson stated that his employer, Volkert, Inc., was hired by DOTD to provide oversight on the project. Although it is not clear the length of time Volkert was involved in the project, Mr. Nelson stated that he acted as Volkert's project manager on the project from June 20, 2018 through October 17, 2019. He further stated:

6.

As the Project Manager, I was responsible oversight of the contractor (James Construction) construction operations and quality assurance control, monitoring the work in the field by the contractor, verification sampling and testing, and payment for work completed by the contractor.

7.

DOTD engaged James Construction to do the work on the State Project in a Design Build Agreement. The Design-Builder shall design, construct, and/or install and the [sic] associated management, control, monitoring, compliance, and professional services and other elements of the Work, which includes the requirements regarding access. James Construction was aware of and complied with the traffic maintenance requirements pursuant to the standard specifications of the Louisiana Standard Specifications for Roads and Bridges, which were incorporated in the contract between DOTD and James Construction.

19

8.

Volkert personnel were on site and monitored James Construction during construction. I was on site every Tuesday during the project. In my absence, two inspectors from Volkert were on site daily (Scott Rome and Courtney Cambre). The Volkert inspectors reported directly to me, and I reported directly to Peggy Jo Paine, DOTD Project Manager.

9.

DOTD through Volkert specifically monitored James Construction to ensure compliance with these contractual terms, and Volkert inspectors identified no instances of violation – there were no times when access to Southland Engine was completely cut off.

According to Mr. Nelson, James, as the design-builder, was required to comply with DOTD's traffic maintenance requirements as set out in the 2006 edition of the Louisiana Standard Specifications for Roads and Bridges. Specification 108.05 of that edition, as provided in Mr. Nelson's affidavit, stated:

The contractor shall conduct the work in such manner and sequence to assure the least interference with traffic. The contractor shall have due regard to the location of detours and provisions for handling traffic. The contractor shall not begin new work to the prejudice of work already started. The engineer may require the contractor to finish a section on which work is in progress before starting on additional sections if the finishing of such section is essential to public convenience and safety.

Mr. Pesson testified that when James began preliminary work on Highway 182 in 2016, it shut down one lane, making Highway 182 a one-way road, with the direction of travel changing multiple times. He further stated that when James shut down both lanes of Highway 182 in August 2017, it put a narrow one-lane road down the middle of the road, which was so narrow that customers pulling trailers were unable to swing their vehicles out far enough to turn onto the road where Southland's entrances were located. Mr. Pesson stated that both lanes were torn up:

When it was shut down the whole entire time [James] left the project. Now, he – it was months before that. And then [James] left the project and then [it] came back to start the project. And it was

20

months after. So, it was tore [sic] up with a one lane road down the middle. And it was a narrow one lane road.

Based on the evidence pertaining to DOTD's monitoring of James's construction activities and the trial court's denial, in part, of James's summary judgment motion, we find that genuine issues of material fact exist with regard to DOTD's liability arising from James's allegedly negligent actions. Accordingly, the judgment of the trial court granting summary judgment in favor of DOTD is reversed in part, and the matter is remanded to the trial court for further proceedings.

## DECREE

For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of the State of Louisiana, through the Department of Transportation and Development, is affirmed in part and reversed in part, with the matter remanded for further proceedings. In conformity with La.R.S. 13:5112, the costs of appeal are assessed $2,012.07 to Southland Engine Company, Inc., Milton Lynn Pesson, Jr., Glenda Pesson, and Lynn & Glenda Pesson Properties, Broussard, LLC and $2,012.07 to the State of Louisiana, through the Department of Transportation and Development.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

21